1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION**

DAVID LEE CLANCY,                 )    Case No. SACV 19-00462-AS
                                  )
            Plaintiff,            )    **MEMORANDUM OPINION**
                                  )
      v.                          )
                                  )
ANDREW M. SAUL, Commissioner      )
of the Social Security            )
Administration,[1]               )
                                  )
            Defendant.            )
_____ )

     For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.


                         **PROCEEDINGS**


     On March 8, 2019, David Lee Clancy ("Plaintiff") filed a Complaint seeking review of the denial of his application for disability benefits

---

     [1]    Andrew M. Saul, the Commissioner of the Social Security Administration, is substituted for his predecessor. <u>See</u> 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

by the Social Security Administration. (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-12). On September 4, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 11-12). On December 4, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 20).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 23, 2014, Plaintiff, formerly employed as a warehouse worker for Nike, Inc., Menlo Worldwide and 3M Dental (<u>see</u> AR 40-45, 217-22), filed an application for Disability Insurance Benefits alleging a disability onset date of August 20, 2014.[2] (<u>See</u> AR 175-78). Plaintiff's application was denied, initially on September 4, 2015, and, on reconsideration on January 6, 2016. (<u>See</u> AR 102-06, 108-12).

On January 19, 2018, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge Susanne M. Cichanowicz ("ALJ"). The ALJ also heard testimony from vocational expert Alan Boroskin ("VE"). (<u>See</u> AR 35-73). On March 6, 2018, the ALJ issued a decision denying Plaintiff's request for benefits. (<u>See</u> AR 15-26). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May

---

[2] The Administrative Law Judge's decision states May 28, 2013 as the onset date of disability.

28, 2013. (AR 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, adhesive capsulitis of the left shoulder, and diabetes mellitus. (AR 17-18).[3] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations. (AR 19).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work[5] with the following limitations:

> [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; can sit for 6 hours out of an 8-hour workday with regular breaks; cannot climb ladders, ropes, or scaffolds; can occasionally balance, kneel, stoop, crouch, and crawl; can frequently reach below shoulder level with the bilateral upper extremity; can occasionally tolerate exposure to uneven terrain and hazards, such as unprotected heights and moving mechanical parts; and avoid exposure to extreme cold, humidity and wetness.

(AR 19-34)

---

[3] The ALJ found that Plaintiff's other impairments -- hypertension, obesity, and depression -- were nonsevere. (AR 18-19).

[4] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a warehouse lead and as a dental machine operator, as actually performed and generally performed, considering Plaintiff's age, education, work experience and RFC (AR 24), and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26). Alternatively, at step five, the ALJ determined, based on Plaintiff's age, education, experience, RFC, and the VE's testimony, that there are jobs that exist in significant numbers in the national economy that Plaintiff can also perform (AR 24-26). Accordingly, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from the alleged disability onset date to the date of the decision. (AR 26).

The Appeals Council denied Plaintiff's request for review on January 14, 2019. (See AR 1-4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir.

2017).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[6]

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred in failing to properly: (1) evaluate the opinions of Plaintiff's treating physician, the examining physician, and/or the reviewing physician; and (2) evaluate Plaintiff's subjective symptom testimony.  (See Joint Stip. at 2-5, 11-14, 19).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from legal error.

//

//

//

---

[6]    The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

**A.    The ALJ Did Not Err in Assessing the Opinion of Dr. Shamlou, Plaintiff's Treating Physician[7]**

Plaintiff asserts that the ALJ failed to properly reject the opinion of his treating physician, Dr. Shamlou. (See Joint Stip. at 2-5, 11-12). Defendant asserts that the ALJ properly rejected Dr. Shamlou's opinion. (See Joint Stip. at 5-11).

1. Legal Standard

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b).[8] "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

---

[7]    Since Plaintiff has focused solely on the ALJ's rejection of the opinion of Plaintiff's treating physician, the Court will not address Plaintiff's claim concerning the ALJ's rejection of the opinions of the examining physician and/or the reviewing physician.

[8]    Since Plaintiff filed his application before March 27, 2017, 20 C.F.R. § 404.1527 applies. For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply. 20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions. See 20 C.F.R. § 404.1520c(a); L.R. v. Saul, 2020 WL 264583, at *3 n. 5 (C.D. Cal. Jan. 17, 2020); see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

"When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d at 654; see also 20 C.F.R. § 404.1527(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir 2008); Lester, 81 F.3d at 830. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester, supra. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted). Finally, an ALJ may reject an opinion of any physician that is conclusory, brief, and unsupported by clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

//
//
//

2. <u>Dr. Shamlou</u>

Dr. Kouroush Shamlou, an orthopedic surgeon at RMS Medical Group, treated Plaintiff on four occasions from October 10, 2014 to March 18, 2016. (<u>See</u> AR 352-53, 420-428).

On September 11, 2015, Dr. Shamlou completed a Private Progress Report following his evaluation of Plaintiff, in which he opined, <u>inter alia</u>, that Plaintiff's "condition is permanent and given his current condition, requiring to take multiple narcotic medications, which interfere with his level of comprehension and function, he is not able to return back to work." (<u>See</u> AR 352-53, 422-23). On March 18, 2016, Dr. Shamlou completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire"), in which he diagnosed Plaintiff with "failed back syndrome with Arachnoiditis", with a poor prognosis, noting that Plaintiff's symptoms included severe lower back pain with bilateral leg pain, stiffness, and weakness. (<u>See</u> AR 415-19). Dr. Shamlou identified a healed scar and reduced range of motion of the lumbar spine as the clinical findings and objective signs supporting his diagnosis, reported that narcotic drugs caused Plaintiff to experience drowsiness and dizziness and concluded that Plaintiff's impairments lasted or can be expected to last at least 12 months, and that emotional factors, specifically, stress, contributed to the severity of Plaintiff's symptoms and functional limitations. (AR 415-16).

The Questionnaire completed by Dr. Shamlou reported that Plaintiff would experience the following functional work limitations if he was placed in a competitive work environment: Plaintiff can walk one block

without rest or severe pain; Plaintiff can sit at one time for 30 minutes before needing to get up; Plaintiff can stand at one time for 20 minutes before needing to sit down or walk around; Plaintiff can sit and stand/walk about 2 hours in an 8-hour workday and must be permitted to (a) shift positions at will from sitting, standing or walking; (b) walk every 5 minutes for 5 to 6 minutes; and (c) take unscheduled breaks 3 to 4 times per day for 15 minutes. (AR 416-17). Dr. Shamlou reported that Plaintiff can (a) rarely (1 percent to 5 percent of an 8-hour workday) lift and carry 10 pounds or less, and can never lift 20 pounds or more; (b) frequently (34 percent to 66 percent of an 8-hour workday) look down, turn his head right or left, look up, and hold his head in a static position; and (c) rarely twist, stoop (bend) and climb stairs, and can never crouch/squat and climb ladders. (AR 417-18). Dr. Shamlou concluded that Plaintiff's symptoms frequently interfere with the attention and concentration needed to perform even simple work tasks, his impairments are likely to produce "good days" and "bad days," and that his impairments or treatment likely will cause him to be absent from work for an average of more than four days per month. (AR 416-18).

3. <u>The ALJ's Findings</u>

The ALJ gave "little weight" to Dr. Shamlou's opinion, finding it to be unsupported by the objective medical evidence and inconsistent with Plaintiff's activities of daily living. (AR 23).

Since Dr. Shamlou's opinion about Plaintiff's limitations with respect to his ability to sit, stand and/or walk, crouch, squat, stoop,

climb stairs and climb ladders, and lift and carry was contradicted by the opinions of other physicians,[9] the "specific and legitimate" standard applies to the ALJ's rejection of Dr. Shamlou's opinion in these areas. See Trevizo, 875 F.3d at 675. However, because Dr. Shamlou's opinion about Plaintiff's ability to sit and stand at one time, and twist, and his need to shift positions at will, walk every 5 minutes for 5 to 6 minutes, have unscheduled breaks, and be absent from work was not contradicted by the opinions of other physicians, the "clear and convincing" standard applies to the ALJ's rejection of Dr. Shamlou's opinion in these areas. See id.

The ALJ properly determined that Dr. Shamlou's opinion was "inadequately supported by the objective medical evidence." See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting

---

[9]    The ALJ gave "significant weight" to the July 21, 2015 opinion of consultative examining physician, Ibrahim Yashuti, an orthopedic surgeon, who opined that Plaintiff can sit for 6 hours a day, stand and walk for 2 hours at a time for a total of 6 hours a day, occasionally squat and crouch, and walk on uneven ground, and can occasionally lift 25 pounds and frequently lift 10 pounds. (See AR 22-23; 332-39).

    The ALJ also gave "significant weight" to the August 2, 2015 opinion of State Agency physician, David Braverman, M.D., and the December 15, 2015 opinion of State Agency physician R. Dwyer, who both found, inter alia, that Plaintiff can sit about 6 hours in an 8-hour workday, stand and/or walk about 6 hours in an 8-hour workday, lift and/or carry 10 pounds frequently and 25 pounds occasionally, can stoop, crouch, and climb ladders/ropes/scaffolds occasionally, and can climb ramps/stairs on an unlimited basis. (See AR 22-23, 82-83, 95-98).

clinical evidence, stating his interpretation thereof, and making findings"; citation omitted).

Reports of Plaintiff's office visits and treatment include notations reflecting that Plaintiff's low back pain was controlled with medication.  On August 20, 2014, Dr. Albert Lai at the  Centers of Rehabilitation and Pain Medicine ("CRPM") noted that (a) Plaintiff reported that prior prescribed medications (Tylenol #3 and Naproxyn) relieved short-term pain but were less effective now and that such medications did not cause side effects, and (b) Plaintiff was prescribed new pain medications (Tramadol 50 mg, Flexeril 10 mg, Neurontin 300 mg and Naprosyn 500 mg). (See AR 291-95).   On September 17, 2014, Dr. Lai noted that, "Pain level has decreased since last visit" and "According to patient medications are helping.  Patient reports no side effects. The patient states he is taking his medications as prescribed.  With the current medication regime, his pain symptoms are adequately managed." (See AR 291-95).   On October 10, 2014, Dr. Shamlou's Initial Report noted that, "[Plaintiff] does take multiple medications for pain, which controls it to some extent." (AR 426-28).   On October 15, 2014, Dr. Shane Daniels at CRPM reported that, "Pain level has decreased since last visit.  The patient is taking his medications as prescribed.  He states that medications are helping." (AR 275-79).

Medical records in 2015 also noted that Plaintiff did not report any side effects from his medications and the current medication regime was adequately managing his symptoms.  See AR  407-12 (Dr. Lai, Office Visit dated June 16, 2015; AR 395-400 (Dr. Lee at CRPM, Office Visit

11

dated July 14, 2015); AR 382-87 (Dr. Lee, Office Visit dated September 8, 2015); AR 370-75 (Dr. Lee, Office Visit dated October 20, 2015), and AR 360-69 (Dr. Lee, Office Visit dated November 17, 2015).

The ALJ noted that Plaintiff had been noncompliant with prescribed medications. (AR 22). See AR 304-05 (Luis Villa, M.D., Pavilion Family Physicians, Office Visit dated June 16, 2014: "Aggravating factors include suboptimal compliance. . . . Unfortunately, [he] has not seen Endocrinologist since last November and he is out of his meds also," and "I once again addressed his noncompliance and his need to take accountability of his actions[.]"); and AR 361, 371, 383, 396, 408 (Dr. Lai, Office Visits dated June 16, 2015, July 14, 2015, September 8, 2015, October 20, 2015 and November 17, 2015: "The patient admits to not taking his medications as prescribed.").[10]

The ALJ found that Dr. Shamlou's opinion was based on minimal clinical findings -- "healed scar" and "reduced range of motion of lumbar spine" -- as indicated by Dr. Shamlou in the Questionnaire. (AR 23, citing AR 415 [identifying the clinical findings and objective signs as "healed scar" and "reduced range of motion of lumbar spine"]). See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician including the treating physician, if that opinion is brief, conclusory and inadequately supported by

---

[10]    While some medical records contain conflicting information, the ALJ was entitled to resolve such conflicts. See Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008)("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."; citation omitted); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 603 (9th Cir. 1999)("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity.").

clinical findings."); <u>Ford v. Saul</u>, 2020 WL 829864, *8 (9th Cir. 2020)("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."); <u>see also</u> 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The ALJ also properly found that Dr. Shamlou's opinion regarding Plaintiff's functional limitations was "inconsistent" with Plaintiff's self-reported activities of daily living, which included personal care tasks, preparing simple meals, doing light household chores, driving a car, shopping in stores, coaching his children's sports activities, and taking his children to and from school. (AR 23). In an adult function report dated April 10, 2015, Plaintiff stated that he prepares simple meals two to three times a week, does light household chores, including light cleaning, folding towels and blankets, and throwing away trash (four to five times a week), and drives his car to take his children to and from school. (AR 225-28). At the hearing on January 19, 2018, Plaintiff testified that he drives his three children to school in the morning, and spends the day "laying down" until he has to pick them up from school at 3:00 p.m. (AR 48-54). <u>See Ford v. Saul</u>, 2020 WL 829864, *8 ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001)(upholding ALJ's rejection of treating physician's opinion where

the doctor's extreme restrictions were inconsistent with the level of the claimant's activity).

The ALJ provided clear and convincing and/or specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Shamlou's opinion.

**B.    The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. (See Joint Stip. at 12-14, 19). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff's subjective symptom testimony not fully credible. (See Joint Stip. at 14-19).

1.    Legal Standard

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo, 871 F.3d at 678. First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id. (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original)(citation omitted). "Nor must a claimant produce objective

medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[11] SSR 16-3p eliminated the term

---

[11] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was
(continued...)

"credibility" from the Agency's sub-regulatory policy.  However, the

Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already
> required: that assessments of an individual's testimony by an
> ALJ are designed to "evaluate the intensity and persistence of
> symptoms after the ALJ finds that the individual has a
> medically determinable impairment(s) that could reasonably be
> expected to produce those symptoms," and not to delve into
> wide-ranging scrutiny of the claimant's character and apparent
> truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the

ALJ may consider: "ordinary techniques of credibility evaluation, such

as . . . prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid;

unexplained or inadequately explained failure to seek treatment or to

follow a prescribed course of treatment; and the claimant's daily

activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014)

(citation omitted). Inconsistencies between a claimant's testimony and

conduct, or internal contradictions in the claimant's testimony, also

may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir.

2014). In addition, the ALJ may consider the observations of treating

and examining physicians regarding, among other matters, the functional

restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at

1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an

ALJ to reject subjective testimony based "solely" on its inconsistencies

---

[11] (...continued)
in effect at the time of the Appeal Council's January 14, 2019 denial of
Plaintiff's request for review. 20 C.F.R. § 416.929, the regulation on
evaluating a claimant's symptoms, including pain, has not changed.

with the objective medical evidence presented. <u>Bray v. Comm'r of Soc.</u> <u>Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." <u>Tommasetti v.</u> <u>Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); <u>see</u> <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain;" citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

2.    <u>Plaintiff's Subjective Statements and Testimony</u>

Plaintiff submitted an Adult Function Report, dated April 10, 2015, in which he stated that his ability to work was limited by his inability to lift more than a few pounds occasionally, walk more than 15 to 20 minutes, sit or stand for a few minutes without having to change positions or take breaks, and to reach and bend more, as well as the constant pain, numbness and tingling in his leg, groin and hand.  (AR

224).[12] His daily activities include taking his children to school and spending the day at home changing positions (sitting, standing or lying down), before sometimes picking up his children from school. His conditions affect his sleep, ability to dress himself, and bathe. He can take care of his personal needs and grooming, prepare simple meals, and do light cleaning, such as folding towels and blankets and throwing trash away, maybe four to five times a week (which takes him 10 to 15 minutes). He goes outside two to three times a day, driving a car, and shops in stores or by mail for living necessities, once or twice a week (which takes him approximately 15 to 20 minutes). His hobbies include watching sports, watching and coaching his children's sporting events and watching television. He spends time with other people five times a week and attends his children's sporting practices five times a week. (AR 225-29).

At the January 19, 2018 administrative hearing, Plaintiff testified that his back pain, which radiates from his lower back through his left leg and calf and affects his groin area, is constant, "running" and "hot," and has worsened since his surgery on December 7, 2017. He takes Norco and a muscle relaxer for his pain and the medications sometimes, but not always, help him sleep through the night. Although the medications alleviate his symptoms, he cannot take them as required because he is responsible for getting his children to school and his

---

[12] In an undated Disability Report – Appeal, Plaintiff stated he takes the following prescribed medications: Flexeril, a muscle relaxer, which causes dizziness; Gabapentin, a pain/nerve medicine, which causes cotton mouth; Naproxen, a pain medicine, which causes no side effects; and Tramadol, a pain medicine, which causes dizziness. (AR 238).

doctors have told him he cannot drive when he takes the medications. (AR 46-48, 50, 54-55, 57, 63). Because of his pain, he cannot stand or sit for a prolonged period. He can stand for 5 to 10 minutes before he has to sit, he can sit upright for about 15 minutes before he has to change positions, he always leans to the right side when he sits, and lying in a fetal position on a futon relieves the pressure. (AR 53-58). His diabetes causes neuropathy, a tingling, non-constant pain sensation in his right leg. (AR 46-48, 54).

Plaintiff relayed that his daily activities involve making sure his children are getting ready for school and driving them to school, which takes five minutes but nonetheless is painful. As soon as he gets home at around 8:15 a.m., he takes his medications and then lies down on the futon (he estimates being on the futon approximately 10 hours a day). He makes lunch and eats it on the kitchen counter. At 2:45 p.m., he drives to school to pick up his children. When he returns home, he makes sure his children are doing their homework. He does not have to feed his children (his mother-in-law does the feeding), and he does not do any cooking. His wife drives his oldest child to water polo; about a year and a half earlier, he had stopped watching his son play because the cold caused him pain. When asked whether he does laundry, he stated that the day before the hearing he had tried to do a small load of laundry but experienced pain by walking downstairs, putting the clothes into the side of the machine (which required stooping and bending) and walking upstairs and was unable to finish the load. He is able to carry, with difficulty, seven or eight pounds (a gallon of milk). He

does grocery shopping once or twice a week, which takes him about fifteen to twenty minutes. It takes him one or two days to clean the house because of his pain and his need to rest and take medications. (AR 48-52, 60-62).

### 3. The ALJ's Credibility Findings

After summarizing Plaintiff's hearing testimony and the medical evidence in the record (see AR 20), the ALJ found that Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms was inconsistent with his activities of daily living, non-compliance with medications and the objective medical evidence. (AR 23-24). The ALJ observed that the physical and mental abilities and the social interactions required for Plaintiff to perform normal activities of daily living, such as personal care tasks, preparing simple meals, doing light household chores, driving a car, shopping in stores, watching sports, and coaching children sports, are the same as those necessary for obtaining and maintaining employment. Therefore, the ALJ found Plaintiff's ability to participate in such activities to be inconsistent with his statements concerning the alleged intensity, persistence, and limiting effects of symptoms. (AR 21-22).

The ALJ also found that Plaintiff's failure to follow treatment recommendations by not taking pain and insulin as prescribed (see AR 304, 361, 386), demonstrated a possible unwillingness to do what was necessary to improve his condition and may be an indication that his symptoms are not as severe as he purports. (AR 21-22).

20

After addressing the opinion of Plaintiff's treating physician (Dr. Shamlou), as well as testimony by Plaintiff's wife (<u>see</u> AR 23), the ALJ concluded that:

> Overall, the evidence as a whole does not support a conclusion that the claimant experiences work-related functional limitations exceeding those reflected in the above residual functional capacity [assessment]. The claimant's subjective complaints are not fully consistent with the medical evidence and the objective medical evidence does not support the alleged severity of symptoms. Accordingly, the undersigned finds that the above residual functional capacity assessment is the most that the claimant could do on a regular and continuing basis despite the claimant's impairment-related limitations.

(AR 24).

4.   <u>Analysis</u>

The ALJ properly determined that Plaintiff's alleged limitations were inconsistent with his ability to perform his activities of daily living, including personal care tasks, (<u>see</u> AR 225), preparing simple meals (AR 226), doing light household chores, such as light cleaning, folding towels and blankets, and throwing away trash (AR 226), driving his car to take his children to and from school and to shop (AR 50, 53, 59, 227) and coaching his children's sporting events (AR 228). Plaintiff's ability to engage in such activities rendered Plaintiff's

testimony that he spent approximately 10 hours a day resting in a fetal position on a futon unbelievable. (AR 58-59). See Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting;" "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); and Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). See also Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)(claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage finances).

The ALJ also properly found that Plaintiff's testimony about the limiting effects of his symptoms was undermined by Plaintiff's failure to follow a prescribed course of treatment, as shown by Plaintiff's noncompliance with prescribed medications (see AR 304-05, 361, 371, 383, 396, and 408). See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(an ALJ may discredit claimant's testimony based on the unexplained, or

22

inadequately explained, failure to follow a prescribed course of treatment). Although Plaintiff challenges the ALJ's interpretation of the evidence of Plaintiff's noncompliance (see Joint Stip. at 13), the Court will not second-guess the ALJ's reasonable interpretation. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ was entitled to, and properly found that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was not supported by the objective medical evidence (see AR 20). See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins, supra ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). As discussed in detail above, numerous medical reports reflect that Plaintiff's back pain was adequately managed by Plaintiff's prescribed medications, for which Plaintiff reported no side effects. As the Court cannot conclude that the ALJ's interpretation of the medical record was irrational, the ALJ's decision must be upheld.

The ALJ's reasons for discounting Plaintiff's testimony about the limiting effects of his pain and symptoms -- inconsistency with activities of daily living, failure to follow a prescribed course of treatment, and the lack of support in the medical record -- were specific, clear and convincing, reasons.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 12, 2020

_____
/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

24